# CHARLESTON.

HANNA & LIGHTNER v. GALFORD *et al.*

Submitted February 18, 1904.   Decided March 1, 1904.

1. EXECUTOR—*Bill.*

   The executors of the last will of G. filed their bill, alleging that their testator had bequeathed specific legacies to his wife and children, to be paid out of his personal property, and a residuary legacy to his grand daughter, to-wit, the residue of his personal and the whole of his real estate; that testator, H., and others were the sureties of A. on his official bond as sheriff; that a judgment for a large sum of money was recovered against A. as principal, and H. and others as surviving obligors of themselves. and of G and others, on said bond; that H. was compelled to pay said judgment; that H. c'aimed contribution from their testator's estate, for one-half of the said judgment paid by him as aforesaid; that the legatees were

clamoring for their legacies and threatening plaintiffs with suits therefor; that testator's estate was not liable for any part of said claim of H., that plaintiffs were in doubt as to their duties in the premises; and praying that the validity or invalidity of said claim of H. be fixed and determined by the court; and that their executorial accounts be settled. *Held*, That the bill is insufficient to warrant the interpositon of a court of equity. (p. 167).

2. EXECUTOR—*Equity.*

The executor or administrator may apply, by a proper proceeding to a court of equity for its aid and relief, when he finds the affairs of his testator, or intestate, so much involved that he cannot safely administer the estate except under the direction of the court. In such case, it is competent for him to institute a suit against the creditors of the estate generally for the purpose of having all of their claims adjusted, and a final decree settling the order and payment of the assets. The court will also lend its aid and relief, in a proper case under such special circumstances as show that injustice will be done to the personal representative, or injury result to the estate, if such and relief be refused. (p. 165).

Appeal from Circuit Court, Pocahontas County.

Bill by Samuel B. Hanna, executor, and others, against Nancy Galford and others. Judgment for plaintiffs, and defendants appeal.

*Reversed.*

J. S. McWHORTER, ANDREW PRICE, and MOLLOHAN, McCLINTIC & MATHEWS, for appellants.

L. M. McCLINTIC, for appellees.

MILLER, JUDGE:

At the December Rules, 1900, Samuel B. Hanna and C. A. Lightner, as executors of Allen Galford, deceased, filed their bill in the circuit court of Pocahontas County, against Nancy Galford, Hannah McLaughlin, Alice McClure, Caroline Tacy, Brown N. Galford, James H. Galford, Bertie L. Galford, Sarah A. Galford, Nancy J. McLoud's administrator, Uriah Hevener, C. C. Burrer, John Driscol, W. H. Collins, J. C. Arbogast, late sheriff of Pocahontas County, and as such, administrator of Samuel L. Gibson, J. C. Arbogast, and the West Virginia Spruce Lumber Company.

The bill alleges in substance that Allen Galford departed this life, testate, on the —— day of ——, 1898, and by his last will and testament, named plaintiffs therein as his executors; that the will was probated; and that plaintiffs qualified as executors thereunder; that in and by his will, the testator directed, first, that his funeral expenses and all of his just debts should be paid, and next, made certain specific legacies to his widow, the defendant, Nancy Galford, and other legacies to his children, Nancy J. McLoud (who died before the institution of the suit), Hannah McLaughlin, Caroline Tacy, Alice McClure, B. N. Galford, and James H. Galford; and a residuary legacy to his granddaughter, Bertie L. Galford, who, as it appears, is an infant, thus disposing of all of his personal estate. Plaintiffs say that under the provisions of the will, they are directed to rent the land devised to said Bertie L. Galford, and to hold in trust all the estate devised and bequeathed to her, until she becomes twenty-one years of age, or until she marries; that said Allen Galford, Uriah Hevener, W. H. Collins, S. L. Gibson, C. C. Burner, John Driscol and Thomas Galford, became and were the sureties of J. C. Arbogast, as sheriff of Pocahontas County on his official bond, in the penalty of thirty thousand dollars, bearing date on the 10th day of December, 1884; that the term of office for which bond was given as aforesaid commenced on the 1st day of January, 1895, and continued for four years next thereafter; that the State of West Virginia, at the relation, and for the benefit, of Amos Barlow, instituted its action at law in the circuit court of said county, on said bond, against said J. C. Arbogast, John Driscol, W. H. Collins, C. C. Burner and Uriah Hevener, who were the surviving obligors of themselves and of Thomas Galford, S. L. Gibson and said Allen Galford; that in said action judgment was recovered by the plaintiff on the 4th day of October, 1898, against said J. C. Arbogast, John Driscol, W. H. Collins, C. C. Burner and Uriah Hevener for $3,125.55, with interest thereon from that date until paid, and costs; that the said Uriah Hevener was compelled to pay, and did pay, said judgment in full, on the 28th day of August, 1899; that said Arbogast and the other sureties are insolvent, and that, if said Uriah Hevener be entitled to contribution from his co-sureties on said bond, such contribution will fall on their testator's estate, and will be a large debt against the same.

Plaintiffs further allege that Uriah Hevener claims contribution from their testator's estate for one-half of the said judgment with interest and costs paid by him as aforesaid; that the legatees, under the will of Allen Galford, are clamoring for their legacies, and threatening plaintiffs with suits for the same, and at the same time said legatees contend that the estate of their testator is not liable for any part of said judgment. Plaintiffs also say that they are advised and therefore charge that the estate of Allen Galford is not liable for any part of said judgment; that the said debt, and every part thereof is barred by the statute of limitations as against their testator's estate; that they plead and rely upon the statute of limitations as a defense against said debt; and they further say that they are in doubt as to their duty as executors of Allen Galford, in the premises, and are unwilling to further execute their trust, without the aid and support of a court of equity to direct and ratify their proceedings; that said Allen Galford was at the time of his death, seized and possessed of several tracts of land, deeds for which are filed; and that these lands, under the will, are held in trust for the defendant, Bertie L. Galford.

Plaintiffs then pray that their trust, as executors of Allen Galford, be executed under the direction of the court; that the validity or invalidity of the claim of Uriah Hevener, as one of the sureties of J. C. Arbogast, late sheriff of Pocahontas County, against their testator's estate be fixed and determined; * * * that their accounts as executors be settled, and for general relief. N. C. McNeil was by the court appointed guardian *ad litem* for the infant defendant, Bertie L. Galford, who by her said guardian *ad litem,* filed her answer to the bill. Defendants, Caroline Tacy and Alice McClure also filed their joint and several demurrer and answer to the bill, whereupon the cause was referred to a commissioner to ascertain and report, among other things, an account showing all the valid and subsisting debts with their amounts and priorities thereto against the estate of Allen Galford, deceased. Under this order of reference, the commissioner did not report the said claim of Uriah Hevener as a liability against the estate of said Galford, deceased, but referred the same with certain observations thereon to the court. Afterwards, defendant, Uriah Hevener filed his answer to the bill, but did not demur thereto, in which answer he gives a his-

tory of the transactions leading up to, and culminating in, the said judgment against Arbogast, himself and others, which he had been compelled to pay, and claiming, from the estate of Allen Galford, deceased, payment of one-half thereof. At the same term, defendants, Bertie L. Galford, by N. C. McNeil, her guardian *ad litem,* Hannah McLaughlin, and Sarah A. Galford, filed their joint and several demurrer and answer to plaintiff's bill, which is also treated as an answer to the said answer of Uriah Hevener, which last mentioned answer seems to have been treated in some respects as a cross-bill.

It appears from the report of the commissioner that said Uriah Hevener was indebted to the estate of Allen Galford on the first day of March, 1898, in the sum of $1,782.95, being the amount due on the bond of Hevener to Galford for $1,500.00, bearing date October 16, 1894, upon which certain credits are endorsed.

On the 21st day of June, 1902, the cause was heard upon the bill and exhibits; the said several answers, and demurrers, which demurrers were then by the court overruled and disallowed; and, it then appearing to the court, that Uriah Hevener was indebted to the estate of Allen Galford, on the bond mentioned in the commissioner's report in the sum of $1,718.40, as of that date, said Hevener having made certain payments thereon, after the report of the commissioner and before the then hearing thereon; and, the court being of opinion that Uriah Hevener was entitled to recover from the estate of Allen Galford, contribution for one-half of the sum of $2,869.37, paid by said Hevener on the said judgment against Arbogast, Hevener and others, and also one-half of $165.00 which said Hevener had paid on another judgment against said Arbogast and sureties, the court then ascertained and fixed the sum of $1,772.24 as the amount then due from said estate to Hevener. And proceeding to adjust all the matters in difference between said Hevener and the estate of Allen Galford, the court found the sum of $53.80 in favor of Hevener against the executors of Galford, and thereupon entered a decree against them in favor of Hevener accordingly. From this decree, said Bertie L. Galford by N. C. McNeil, her guardian *ad litem,* and Sarah A. Galford, appeal, and, among other assignments of error, say that the circuit court erred in overruling their said demurrers to plaintiffs' bill.

It is suggested by counsel for appellee, Uriah Hevener, that appellants are not entitled to their appeal, because, as urged, the controversy is between said Hevener and the executors of the estate of Allen Galford. This position is untenable. The infant appellant is the residuary legatee of both the real and personal estate. The will, in part, says: "After paying all the expenses attending the execution of the provisions of this will, and the erection of a tombstone over my grave, and my wife's grave, I devise and bequeath all the remainder of my estate, both real and personal to my grand daughter, Bertie L. Galford."

If the decree be erroneous and allowed to stand, it will deprive the estate of $1,772.24, in which said Bertie L. Galford is directly interested. That she is interested, and prejudiced by the decree, if erroneous, is plainly apparent. Should the court have sustained her demurrer to the bill? The answer to this query depends upon the sufficiency of the allegations of the bill to bring the cause within some recognized equity principle, which confers jurisdiction upon the courts. In 1 Story's Eq. Jur. s: 544, it is said: "The application for aid and relief in the administration of estates is sometimes made by the executor or administrator himself, when he finds the affairs of his testator or intestate so much involved that he cannot safely administer the estate except under the direction of a court of equity. In such a case it is competent for him to institute a suit against the creditors generally, for the purpose of having all their claims adjusted, and a final decree settling the order and payment of the assets These are sometimes called Bills of Conformity (probably because the executor or administrator in such case undertakes to conform to the decree, or the creditors are compelled by the decree to conform thereto) ; and they are not encouraged, because they have a tendancy to take away the preference which one creditor may gain over another by his legal diligence. Besides it has been said that these bills may be made use of by executors and administrators to keep creditors out of their money longer than they otherwise would be. However correct these reasons may be for a refusal to interfere in ordinary cases involving no difficulty, they are not sufficient to show that the court ought not to interfere in behalf of an executor or administrator under special circumstances where injustice to himself or injury to the estate may otherwise arise." Plain-

tiffs allege that Uriah Hevener claims contribution from their testator's estate for one-half of the said judgment, with interest and costs, paid by him as aforesaid. It nowhere appears that Hevener has instituted suit against the executors of the estate for the recovery of the claim, or that he intends to do so. It is the duty of persons who have claims or demands against an estate, to establish the same in some appropriate legal manner; until this be done, the personal representatives should not pay them. If action or suit be brought by the claimant, it is the legal duty of the personal representative to make proper defense thereto, under penalty of being charged with any loss, occasioned by his negligence or failure to do so. It is not incumbent on the personal representative to bring suit, and involve estates in litigation and costs, merely because some person claims something against the estate, which they represent. If this practice were permitted, the courts would be filled with useless controversies; and estates wasted by unnecessary and unauthorized costs.

Plaintiffs pray that the validity or invalidity of the claim of Hevener be fixed and determined by the court. It will be proper for the court to adjudicate that matter, when Hevener sees fit to bring it into court in some appropriate proceeding. Plaintiffs further allege, by way of excuse for the institution of their suit, that the legatees, under the will of Allen Galford, are clamoring for their legacies, and are threatening plaintiffs with suits for the same, and at the same time, said legatees contend that the estate of their testator is not liable for any part of said judgment; and plaintiffs also say that they are advised, and therefore charge, that the estate of Allen Galford is not liable for any part of said judgment, because said debt and every part thereof was and is barred by the statute of limitations. This allegation is wholly insufficient to sustain the bill. If the executors had really desired to pay the legacies to the legatees, they could have taken proper and sufficient refunding bonds for their indemnity. Moreover, there is no apparent reason why the executors could not have maintained an action at law against Hevener, for the recovery of the amount due from him on his said $1,500.00 bond given to Allen Galford. There is not shown any such complication of accounts between Hevener and the

Galford estate as authorizes the interposition of a court of equity.

Plaintiffs state as a further reason for their suit that they are in doubt as to their duty as executors of Allen Galford in the premises, and are unwilling to further execute their trust without the aid and support of a court of equity to direct and ratify their proceedings. They do not ask for a construction of the will or of any of the provisions thereof. Neither do they pray the authority of the court for the investment or disposition of any funds belonging to the infant defendant arising from the estate, under the will. The suit was not necessary for the settlement of the executorial accounts of the plaintiffs. Such settlement could have been made by a commissioner of accounts.

There are no facts averred from which it can be determined that the executors found the affairs of their testator so much involved that they could not safely administer the estate, except under the direction of a court of equity; and no special circumstances are shown why injustice to themselves, or injury to the estate, would be suffered unless the interference and aid of the court should be allowed in their behalf. In no view, nor for any purpose stated therein, can the bill be sustained. It was therefore error to overrule appellants' demurrer thereto.

For the reasons stated, the decree of the circuit court complained of, is reversed and held for naught; appellants' demurrer to the bill sustained; and said bill dismissed, for want of equity jurisdiction.

*Reversed.*